Filed:  July 26, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-1622
(CA-98-41-4)

Loretta Jones Murray, etc.,

                              Plaintiff - Appellee,

        versus

United States of America,

                              Defendant - Appellant.

O R D E R

        The court amends its opinion filed June 21, 2000, as follows:

        On page 10, second full paragraph, line 13 -- the words "rejected the defendant's argument" are corrected to read "rejected the plaintiff's argument."

                                        For the Court - By Direction

                                        /s/ Patricia S. Connor
                                                Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LORETTA JONES MURRAY, Executrix
and Personal Representative of the
Estate of Weston Murray, Deceased,
<u>Plaintiff-Appellee,</u>

v.

No. 99-1622

UNITED STATES OF AMERICA,
<u>Defendant-Appellant,</u>

MARY IMMACULATE HOSPITAL,
<u>Movant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Henry C. Morgan, Jr., District Judge.
(CA-98-41-4)

Argued: April 6, 2000

Decided: June 21, 2000

Before NIEMEYER, Circuit Judge, Roger J. MINER,
Senior Circuit Judge of the United States Court of Appeals
for the Second Circuit, sitting by designation and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Goodwin wrote
the opinion, in which Judge Niemeyer and Senior Judge Miner joined.

_____

**COUNSEL**

**ARGUED:** Anita Kay Henry, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellant. Larry W. Shelton, SHELTON & MALONE, P.C., Norfolk, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellant.

_____

**OPINION**

GOODWIN, District Judge:

This wrongful death action arises from the negligent medical services provided by Dr. James Hendricks, an agent of the McDonald Army Community Hospital, to Weston Murray, the plaintiff's deceased husband. The issue on appeal is whether the district court, in reaching a verdict for the plaintiff, Loretta Murray, correctly applied the concept of "substantial possibility of survival" to the element of proximate cause. We conclude that the district court erred in interpreting the Virginia Supreme Court's use of the "substantial possibility of survival" language as relaxing the standard of proof required to establish causation. Accordingly, we reverse and remand with instructions that judgment be entered in favor of the defendant.

I.

At approximately 1:03 a.m. on November 26, 1996, Weston Murray presented himself at the Urgent Care Center, an affiliate of the McDonald Army Community Hospital in Fort Eustis, Virginia. Dr. James Hendricks, the on-duty physician, examined Mr. Murray. During the examination, Mr. Murray informed Dr. Hendricks that he was suffering from abdominal pain that felt "like a hernia, like something [was] popping in [his] stomach." After reviewing the results of several diagnostic tests, Dr. Hendricks informed Mr. Murray that he had a urinary tract infection.

The Urgent Care Center released Mr. Murray at approximately 2:45 a.m., and Mr. Murray asked his wife to bring the car around

2

because he still was not feeling well. Mr. Murray collapsed as he was approaching the car, and the Urgent Care Center readmitted him. Mr. Murray collapsed a second time at approximately 3:40 a.m., and he lost his pulse at 3:55 a.m. Attempts to resuscitate him were unsuccessful, and he was pronounced dead at 4:33 a.m. The medical staff informed Ms. Murray that her husband died of a heart irregularity. An autopsy of Mr. Murray's body determined, however, that the actual cause of death was a relatively large ruptured right common iliac artery aneurysm (abdominal aneurysm).

On September 17, 1997, the plaintiff, on behalf of her husband's estate, filed an administrative claim for $1 million with the Department of the Army pursuant to 28 U.S.C. § 2675. The plaintiff subsequently filed suit in the Eastern District of Virginia under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., alleging that the government's failure to diagnose and surgically repair her husband's abdominal aneurysm was the proximate cause of his death. The plaintiff requested funeral expenses, lost income, damages for sorrow and solace, and other damages permitted by the Virginia Wrongful Death Act, Va. Code § 8.01-50 et seq.

After a three day bench trial, the district court granted judgment in favor of the plaintiff in the amount of $267,282.23, including taxable court costs. The district court subsequently issued an opinion explaining its decision. See generally Murray v. United States, 36 F. Supp. 2d 713 (E.D. Va. 1999). In support of its entry of judgment for the plaintiff, the district court stated that the defendant, through its agent Dr. Hendricks, was negligent in its diagnosis and treatment of Mr. Murray and that the plaintiff had proven that such negligence was a proximate cause of Mr. Murray's death.

The district court based its finding of negligence on testimony that Dr. Hendricks's medical record and physical exam of Mr. Murray were incomplete and that the laboratory results did not support Dr. Hendricks's diagnosis of a urinary tract infection. Id. at 723. The district court discussed expert testimony that Dr. Hendricks should have referred Mr. Murray to another hospital, where he could have received a CT-Scan and life saving surgery. Id. at 716. The defendant's own expert described Dr. Hendricks's misdiagnosis as "inde-

3

fensible." Id. at 723. The parties do not dispute the district court's finding of negligence.

The issue on appeal concerns the district court's finding of proximate cause. The district court stated in its opinion that to establish that Dr. Hendricks's negligence proximately caused Mr. Murray's death, the plaintiff must establish that the negligence destroyed a substantial possibility that Mr. Murray would have survived the abdominal aneurysm. Id. The district court then found by a preponderance of the evidence that Mr. Murray would have survived if, prior to losing his pulse at 3:55 a.m., he had arrived in an operating room at the second hospital ready for surgery. Id. The district court then determined that neither side had proven by a preponderance of the evidence whether or not Mr. Murray could have arrived at the second hospital in time to receive life saving surgery by 3:55 a.m. Id. Accordingly, the court concluded that the plaintiff had not proven that it is more probable than not that Mr. Murray would have survived. Id.

The district court then proceeded to discount this conclusion, stating that Virginia law does not require the plaintiff to prove that it is more probable than not that Mr. Murray would have survived the aneurysm. Id. The court found that Mr. Murray "possibly could have obtained life saving surgery, and his possibility of survival in these circumstances was between thirty and sixty percent." Id. The court reached these percentages by "combining the percentage survival rate with the possibility of obtaining surgery in the available time frame." Id. The court then found that "thirty to sixty percent constitutes a substantial possibility that Mr. Murray could have obtained life saving surgery." Id. Based on this finding, the court concluded that the plaintiff had proven that the defendant's negligence was a proximate cause of Mr. Murray's death.

II.

The central issue on appeal concerns the application of the concept of "substantial possibility of survival" to the proximate cause element of medical malpractice cases. The defendant appeals the district court's finding of proximate cause, arguing that Virginia adheres to the traditional elements of proof and causation. The defendant therefore does not believe that Virginia courts intended their use of the

4

"substantial possibility of survival" concept to relax proof of causation requirements.

The plaintiff argues in response that the appropriate test for proximate cause is whether the defendant's negligence destroyed a substantial possibility of the decedent's survival. She further maintains that the district court correctly found that the Virginia Supreme Court does not define "substantial possibility of survival" as meaning that it is "more probable than not" that the decedent would have survived. The plaintiff therefore contends that the district court's finding that Mr. Murray could have obtained life saving surgery but for Dr. Hendricks's negligence is sufficient to establish proximate cause.

On appeal, we review de novo the district court's legal conclusions regarding the correct standard of proof for proximate cause. See Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999) (stating that on appeal from a bench trial, the court reviews the district court's conclusions of law de novo). Having conducted a de novo review and for the reasons set forth below, we find that Virginia law applies the traditional standard of proximate cause and that requiring a plaintiff to prove destruction of a "substantial possibility of survival" is equivalent to requiring the plaintiff to prove that it is "more likely than not" that the decedent would have survived in the absence of the defendant's negligence. Accordingly, we conclude that the district court erred in interpreting the "substantial possibility of survival" language as relaxing the standard of proof required to establish causation.

III.

In traditional negligence cases, the plaintiff must satisfy the following four basic elements by a preponderance of the evidence: 1) duty; 2) breach; 3) causation; and 4) harm. W. Page Keeton et al., Prosser and Keeton on Torts § 30, at 164-65 (5th ed. 1984). The causation element requires the plaintiff to prove that there is a reasonable connection between the defendant's negligence and the plaintiff's damages. See id. § 41, at 263. In essence, the plaintiff must prove that the "defendant's breach of duty was more likely than not (i.e., probably) the cause of injury." Hurley v. United States , 923 F.2d 1091, 1094 (4th Cir. 1991).

5

A.

Applying the causation element to medical malpractice cases has been a confusing task for many courts since the Fourth Circuit's decision in <u>Hicks v. United States</u>, 368 F.2d 626 (4th Cir. 1966). <u>Hicks</u> was a wrongful death medical malpractice action in which the plaintiff, administrator of the decedent's estate, alleged that the decedent's death was due to the defendant's failure to diagnose and treat her illness. <u>Id.</u> at 628. In finding that the defendant's negligence proximately caused the decedent's death, the Fourth Circuit stated:

> When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly.

<u>Id.</u> at 632 (citing <u>Harvey v. Silber</u>, 2 N.W.2d 483 (1942)). This language introducing the concept of "substantial possibility of survival" within the context of proximate cause has become the source of confusion for the parties in this action and has "precipitated misunderstanding throughout the courts." <u>See Hurley</u>, 923 F.2d at 1093.

Courts have adopted conflicting interpretations of the <u>Hicks</u> language. Some courts have determined that <u>Hicks</u> has no effect on negligence law, leaving traditional causation principles unaltered. <u>See id.</u> at 1097-98 (citing Maryland case that does not recognize <u>Hicks</u> as affecting the law of negligence). Other courts, including the district court below, have interpreted the concept of "substantial possibility of survival" as relaxing the proof of causation requirement. <u>See id.</u> at 1098 (citing Maryland case that indicates that <u>Hicks</u> relaxes proof of causation requirement). Further, other courts have concluded that <u>Hicks</u> created an entirely new cause of action for deprivation of a sub-

6

stantial possibility of survival.**1** <u>See</u> Lisa Perrochet et al., <u>Lost Chance Recovery and the Folly of Expanding Medical Malpractice Liability</u>, 27 Tort & Ins. L.J. 615, 617-18 (1992) (stating that courts recognizing the loss of a less than even chance of recovery as an actionable injury frequently refer to <u>Hicks</u>).

This court has adopted the first approach and determined that <u>Hicks</u> does not alter traditional causation principles. <u>See Hurley</u>, 923 F.2d at 1093-95; Lisa Perrochet et al., <u>supra</u> at 618 (stating that "the Fourth Circuit recently clarified that its decision in <u>Hicks</u> did not represent a departure from the traditional rule that medical malpractice plaintiffs must prove causation in accordance with the reasonable medical probability standard"). In <u>Hurley v. United States</u>, we found that the second sentence in the <u>Hicks</u> passage is the one that courts have seriously misconstrued: "If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable." <u>Hurley</u>, 923 F.2d at 1094 (quoting <u>Hicks</u>, 368 F.2d at 632). We then noted that "the third and fourth sentences in the passage shed light on the proper interpretation of `substantial possibility.'" <u>Hurley</u>, 923 F.2d at 1094. We stated that

> [the third and fourth sentences] say in essence that it is rarely possible for a plaintiff to show to an absolute certainty what would have happened had the defendant not been negligent. Thus, the plaintiff need not prove to a certainty that the plaintiff would have lived had she been treated in compliance with the standard of care. For support, Judge Sobeloff cited <u>Harvey v. Silber</u>, which held that evidence showing that there is a probability, rather than a certainty, that an operation would have saved a patient's life is sufficient to prove that a negligent diagnosis was the proximate cause of death. Evidently, the message in the passage is that a plaintiff need not show to a certainty that surgery would have saved the patient's life. A probability of success is sufficient.

_____

**1** Such a cause of action is not available in Virginia. <u>See Dolwick v. Leech</u>, 800 F. Supp. 321, 327 (E.D. Va. 1992).

Id. We further provided:

> The law of negligence requires the plaintiff to prove by a preponderance of the evidence that defendant's breach of duty caused the plaintiff's injury. In other words, the plaintiff must prove the defendant's breach of duty was more likely than not (i.e., probably) the cause of injury. Therefore, the point made in the passage that causation must be proved to a probability, but not to a certainty, does not make any change in the law of causation.

Id. Accordingly, we interpreted "a `substantial possibility' to be tantamount to a `probability'" and concluded that "Hicks made no change to the law that requires the plaintiff to establish proximate cause by a preponderance of the evidence in order to prove medical malpractice negligence." Id. at 1095.

This court therefore views a "substantial possibility of survival" as equivalent to a "probability" of survival. A probability is a "condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it." Black's Law Dictionary 1201 (6th ed. 1990). It implies something that "is more likely than not, or that is greater than 50%."[2] Hurley, 923 F.2d at 1095 n.26. Thus, applying the "substantial possibility of survival" concept to the causation element of medical malpractice cases does nothing more than require a plaintiff to prove that it is more likely than not that the decedent would have survived in the absence of the defendant's negligence.

B.

We believe that this view is consistent with that adopted by the Virginia Supreme Court. See Lisa Perrochet et al., supra at 623 (listing Virginia as one of the American jurisdictions that continues "to

_____

[2] The phrases "more likely than not" and "more probable than not" have the same meaning. See Black's Law Dictionary, supra at 1201 (equating "probable" with "likely"). The court therefore uses the term "probability" and the phrases "more likely than not" and "more probable than not" interchangeably.

8

adhere to the traditional reasonable medical probability standard of causation"). The Virginia Supreme Court first discussed the concept of "substantial possibility of survival" in Whitfield v. Whittaker Memorial Hospital, 169 S.E.2d 563 (Va. 1969). Whitfield was a medical malpractice action in which the trial court granted the physician defendant's motions to strike the plaintiff's evidence and to enter judgment in his favor. Id. at 564. The defendant argued on appeal that evidence that an operation probably would have saved the patient's life was "mere speculation." Id. at 568. The Virginia Supreme Court disagreed, citing Hicks for the principle that "[i]f there was any substantial possibility of survival and the defendant has destroyed it, he is answerable" and that "[r]arely is it possible to demonstrate to an absolute certainty what would have happened if certain actions had been taken." Id. at 568-69 (citing Hicks, 368 F.2d at 632). The Virginia Supreme Court therefore simply reiterated the message behind the Hicks passage: It is not necessary to prove to a certainty that a patient would have survived; a probability is sufficient.

Since Whitfield, the Virginia Supreme Court has continued to apply the "substantial possibility of survival" concept in evaluating the sufficiency of a plaintiff's evidence of proximate cause. See Bryan v. Burt, 486 S.E.2d 536, 539-40 (Va. 1997); Poliquin v. Daniels, 486 S.E.2d 530, 534 (Va. 1997); Griffett v. Ryan, 443 S.E.2d 149, 152 (Va. 1994); Hadeed v. Medic-24, Ltd., 377 S.E.2d 589, 594 (Va. 1989); Brown v. Koulizakis, 331 S.E.2d 440, 446 (Va. 1985). In these cases, as in Whitfield, evidence existed to demonstrate that in the absence of the defendant's negligence, the decedent more likely than not would have survived. See Poliquin, 486 S.E.2d at 534 (discussing expert's opinion "to a reasonable degree of medical probability that, had the Defendants known what they should have known about [the decedent's] condition prior to surgery and, thereafter, employed the appropriate procedures during surgery, [the decedent] would have survived the surgery" (emphasis added)); Griffett, 443 S.E.2d at 152 (considering testimony that "within a reasonable degree of medical certainty there `would have been a high likelihood that [an] operation . . . would have resulted in the patient being saved'" (emphasis added)); Hadeed, 377 S.E.2d at 594 (finding that jury could reasonably determine that with bypass surgery, the decedent would have had an 85-90% chance of living to age 70 (emphasis added)); Brown, 331 S.E.2d at 446 (discussing evidence that 95-98% of patients in the

9

decedent's condition survive when properly treated (emphasis added)). Given such evidence, the Virginia Supreme Court concluded in each case that the plaintiff had demonstrated that the defendant's negligence destroyed a substantial possibility of the decedent's survival and that the plaintiff therefore had sufficient evidence of proximate cause. See Poliquin, 486 S.E.2d at 534; Griffett, 443 S.E.2d at 152; Hadeed, 377 S.E.2d at 594; Brown , 331 S.E.2d at 446.

The Virginia Supreme Court, in its use of the "substantial possibility of survival" concept in these cases, did not relax the standard of proof to be applied to proximate causation. In none of these cases did the Virginia Supreme Court deem as sufficient evidence that does not demonstrate to a probability that the decedent would have survived. Rather, these cases simply rejected the certainty standard of proof. The Virginia cases are therefore consistent with the view that requiring a plaintiff to prove that the defendant destroyed a "substantial possibility of survival" is equivalent to requiring a plaintiff to prove that in the absence of the defendant's negligence, the decedent more likely than not would have survived.

This conclusion is further supported by the Virginia Supreme Court's decision in Blondel v. Hays, 403 S.E.2d 340 (Va. 1991). Blondel involved an appeal from a trial court's denial of the plaintiff's requested jury instruction on the "substantial possibility of survival" standard. The plaintiff argued that he was entitled to an instruction informing the jury of the principle of Virginia law that "a defendant physician's destruction of `any substantial possibility of the patient's survival' is `a proximate cause of the patient's death.'" Id. at 343. The plaintiff further argued that the traditional proximate cause instructions[3] given by the court were improper because they "require him to prove that the patient would have recovered perfect health, or survived indefinitely in the absence of the negligence." Id. at 344. The Virginia Supreme Court rejected the plaintiff's argument, stating: "The plain-

_____

[3] The court gave the following instructions on proximate cause: 1) "If Dr. Hays was negligent, was her negligence a proximate cause of Ms. Sheehan's death?" and 2) "A proximate cause of an injury or death is a cause which in natural and continuous sequence produces the injury or death. It is a cause without which the injury or death would not have occurred." Blondel, 403 S.E.2d at 343.

10

tiff's burden . . . was simply to prove that the particular time and manner of the patient's death resulted from the defendant's negligence. In that respect, his burden is no different from that attendant upon any other actions for personal injuries or wrongful death." Id. The court further stated:

> The jury's function in a medical malpractice-wrongful death case remains the same as in any other tort action: to decide the issues of negligence, proximate cause, and damages. The well-settled law on the subject of proximate cause was correctly expressed by [the instructions given]. Under those traditional instructions, the plaintiff's theory of the case could have been readily established by proof that the defendant physician's negligence was a proximate cause of the patient's death because, in the absence of that negligence, her death would not have occurred when it did.

Id. This language demonstrates that the Virginia Supreme Court, in equating destruction of a "substantial possibility of survival" with proximate cause, has not altered the traditional principles of causation.

The Virginia Supreme Court further stated that it has only employed the "substantial possibility of survival" language to provide trial courts with a decisional standard in evaluating the sufficiency of a plaintiff's evidence of proximate cause. See id. We do not believe that the Virginia Supreme Court, in making this statement, intended for courts to apply a standard in evaluating a plaintiff's evidence of proximate cause that is different than that employed by the fact finder in determining whether the plaintiff has proven causation by a preponderance of the evidence. As previously explained, the "substantial possibility of survival" standard is identical to the traditional standard of proximate causation. In emphasizing that the "substantial possibility of survival" language is not appropriate for a jury instruction, the Blondel court was simply expressing its concern about the "indiscriminate use of language from appellate opinions in a jury instruction" and about leaving a jury to speculate as to what may be considered "substantial." Id. at 344-45.

11

IV.

Having determined that the Virginia Supreme Court's use of the "substantial possibility of survival" language does not deviate from traditional principles of proximate cause, we find that the district court erred in relaxing the standard of proof that the plaintiff must meet in establishing causation. The district court correctly stated in its opinion that "the applicable test for proximate cause is whether th[e defendant's] negligence destroyed a substantial possibility of the decedent's survival from the condition misdiagnosed or mistreated." Murray, 36 F. Supp. 2d at 721 (citing Whitfield, Bryan, and Poliquin). In its findings of fact, the district court evaluated the plaintiff's evidence of proximate cause and found that "neither side has proven by a preponderance of the evidence whether or not the decedent could have secured life saving surgery by 3:55 a.m." Id. at 723. Accordingly, the court found that the plaintiff did not prove "that it is more probable than not that Mr. Murray would have survived." Id.

This finding leads to the conclusion, under Virginia law, that the plaintiff did not prove that the defendant destroyed a substantial possibility of Mr. Murray's survival. Accordingly, the plaintiff failed to prove causation by a preponderance of the evidence. Rather than enter judgment in favor of the defendant, however, the district court proceeded to reach an erroneous conclusion of law. The district court stated that "Virginia law does not require that the Plaintiff prove it is more probable than not that he would have survived the aneurysm." Id. The district court then found that there was a substantial possibility that the decedent could have obtained life saving surgery. Id. Believing that the "substantial possibility of survival" language relaxes the plaintiff's burden of proof, the court concluded, despite its previous finding, that "the Plaintiff had proven that the Defendant's negligence was a proximate cause of the decedent's death." Id. Under the traditional principles of proximate cause that are accepted by Virginia law, this conclusion is in direct conflict with the district court's finding that the plaintiff did not meet the "more probable than not" standard.

For these reasons, we reverse the judgment entered in the plaintiff's favor and remand with instructions that judgment be entered for the defendant consistent with the district court's finding that the plain-

12

tiff failed to prove that it is more probable than not that the decedent would have survived in the absence of the defendant's negligence.

<u>REVERSED AND REMANDED WITH INSTRUCTIONS</u>

13